IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 11-3329 |
| | ) | |
| GAUTAM GUPTA, JAANA MONIKA | ) | |
| VIRTA-GUPTA, and GAUTAM | ) | |
| GUPTA, M.D., LLC, d/b/a THE | ) | |
| NUTRITION CLINIC, and | ) | |
| RAKEESH WAHI, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This matter comes before the Court on Plaintiff United States of America's Motion to Reconsider Temporary Restraining Order. See d/e 6 (Motion). For the reasons stated below, the Court will not reconsider its finding that the Government is required to satisfy the four-factor test typically used in cases of injunctive relief. However, because the Motion recites proof sufficient to obtain a TRO, the Motion is ALLOWED.

1

## RELEVANT FACTS

On August 24, 2011, Plaintiff United States of America (the Government), filed a Motion for Temporary Restraining Order and Preliminary Injunction (Motion) under 18 U.S.C. § 1345 . See d/e 3. The Government attached a 14-page affidavit from Michael Kuba, an Illinois State Police Officer, stating that his investigation of Dr. Gupta shows that Dr. Gupta violated 18 U.S.C. § 1347 by obtaining $2.3 million in fraudulently obtained health care payments. See d/e 3-1 at 8-9 (Aff. In Support of Injunctive Relief). Officer Kuba's affidavit detailed how from June 2001 to January 2010, Dr. Gupta and persons acting on his behalf systematically inflated bills they submitted for Medicaid reimbursement. The Complaint for Injunctive Relief filed against Dr. Gupta similarly alleged a $2.3 million dollar Medicaid fraud. See d/e 1.

By comparison, the Government's Motion for Entry of Temporary Restraining Order and Preliminary Injunction alleged fraud in excess of $20 million. See d/e 2. The $20 million figure is consistent with the amount alleged in a criminal indictment pending against Dr. Gupta

wherein Dr. Gupta defrauded Blue Cross and Blue Shiled of Illinois.  See United States v. Gupta, et al., 11-30043 (C.D.Ill. (July 13, 2011)).  However, this Court does not consider amounts pertaining to the Blue Cross and Blue Shield of Illinois fraud since the amount alleged in the instant civil case is limited to the $2.3 million in Medicaid fraud.

The $2.3 in fraudulent Medicaid bills were sent to the Illinois Department of Health and Family Services' (HFS) offices in Springfield, Illinois for processing and payment.  HFS administers the Medicaid program for the State of Illinois and received Medicaid funds pursuant to 42 U.S.C. § 1396, et seq.

Although the fraudulent scheme is over, Dr. Gupta is allegedly dissipating assets traceable to his fraud insofar as he is selling and transferring property he purchased with proceeds of the fraud.  See d/e 3-1 at 10-14 (Aff. In Support of Injunctive Relief).  Therefore, the Government moved to enjoin Dr. Gupta, and those acting on his behalf, from dissipating assets traceable to the scheme to defraud.  Additionally, the Government alleges that while Dr. Gupta has sold The Nutrition

3

Clinic, The Nutrition Clinic has at least $300,000 in outstanding accounts receivable. Id. at 13-14.

The Nutrition Clinic The Government filed a brief in support of its Motion. See Memorandum in Support of Temporary Restraining Order, Preliminary Injunction and Other Equitable Relief (d/e 4). The brief and the related pleadings allege that Dr. Gupta has fled this country to avoid prosecution. Prior to fleeing, Dr. Gupta provided his wife, Defendant Jaana Monika Virta-Gupta, with a "power of attorney" designed to liquidate and/or transfer assets in Dr. Gupta's name and in the name of his corporations within the United States. See, i.e., d/e 3-1 at 12-13 (Aff. In Support of Injunctive Relief).

This Court denied the Government's motion initially because the Government did not satisfy the four-factor test required for injunctive relief. See Text Order dated August 24, 2011 (citing United States v. Hoffman, 560 F.Supp.2d 772 (D.Minn. 2008)(applying four-factor test in context of 18 U.S.C. § 1345) and United States v. Williams, 476 F.Supp.2d 1368 (M.D.Fla. 2007)(same). However, the Court gave the

4

Government leave to refile.  See Text Order dated August 24, 2011.

On August 25, 2011, the Government moved for reconsideration by filing the instant Motion.  As before, the Government contends that it need not satisfy the traditional four-factor test.  Nonetheless, because the Government alternatively provides evidence to satisfy the four-factor test to support issuance of a TRO, this Court will enjoin Dr. Gupta, and those acting on his behalf, from dissipating assets traceable to the scheme to defraud.  The injunction shall not apply to erstwhile Defendant Rakeesh Wahi, a medical doctor who worked with Dr. Gupta and allegedly participated in the fraud.  The reason for this limitation is that the Government voluntarily dismissed Dr. Wahi from this case on August 26, 2011.  See d/e 5 (Notice of Voluntary Dismissal).

## JURISDICTION & VENUE

Because the Government is the plaintiff and a federal question is posed by the § 1345 issue, this Court has subject matter jurisdiction.  See 28 U.S.C. §§ 1345, 1331.  Personal jurisdiction and venue requirements are satisfied because relevant acts—the processing of Defendants'

fraudulent bills at HFS' Springfield, Illinois office—occurred in this judicial district.  See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (personal jurisdiction exists where a defendant "purposefully avail[ed] [himself or herself] of the privilege of conducting activities" in the forum state); see 28 U.S.C. §1391(b) (venue in non-diversity cases is proper in a judicial district where any defendant resides, if all defendants reside in the same State).

## STANDARD FOR INJUNCTIVE RELIEF

To obtain a TRO, a movant must show that:  (1) it is reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) it will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest.  See Joelner v. Vill. of Washington Park, Illinois, 378 F.3d 613, 619 (7th Cir. 2004)(stating requisite elements for a TRO); Goodman v. Illinois Dep't of Fin. and Prof'l Regulation, 430 F.3d 432, 437 (7th Cir. 2005) (internal citations omitted)(stating that a movant bears the burden of proof).

Section 1345 is appropriately used to enjoin a defendant from dissipating assets traceable to health care fraud. Id. at § 1345(a)(2)(B)(i). "To succeed on a claim to enjoin fraud under section 1345, the plaintiff must demonstrate the balance of the four equitable factors—success on the merits, irreparable injury, the balance of the hardships on the parties, and the public interest—weigh in favor of injunctive relief, but also must establish that fraud has been committed and demonstrate the extent of such fraud." Williams, 476 F.Supp.2d at 1374 (citing United States v. Brown, 988 F.2d 658, 663 (6th Cir. 1993).

*Ex parte* relief, such as the Government seeks here, is permissible only if the Government satisfies Federal Rule of Civil Procedure 65(b)(1)(A) or (B). Rule 65(b)(1)(A) provides for *ex parte* relief when specific facts in an affidavit show that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition". Since the affidavit of Officer Kuba states that assets traceable to the Defendants' $2.3 million fraud are presently being dissipated, *ex parte* relief is permissible under Rule 65(b)(1)(A). See d/e

3-1 at 10-12 (Aff. In Support of Injunctive Relief).

ANALYSIS

The instant Motion states that Congress' purpose in enacting 18 U.S.C. § 1345 was "'to allow the Attorney General to put a *speedy end* to a fraud by seeking an injunction in federal district court" as soon as the requisite evidence is secured.'" United States v. American Heart Research Foundation, Inc., 996 F.2d 7, 11 (1st Cir. 1993) (emphasis in original)(quoting S. Rep. 225, 98th Cong., 2d Sess. 402 (1984), reprinted in U.S. Code Cong. & Admin. News 3182, 3549). The Government argues that the legislative history and plain language of § 1345 shows that courts may dispense with the traditional four-part test for injunctive relief. See Motion at 3. Moreover, the Government cites several cases where courts imposed injunctions without applying the traditional four-factor test in order to prevent ongoing harm to the public. See Motion at 3-6 (citing, inter alia, United States v. Odessa Union Warehouse Co-Op, 883 F.2d 172, 175-76 (9th Cir. 1987), Heart Research Foundation, Inc., 996 F.2d at 11).

The authority cited by the Government—none of which is a Seventh Circuit case pertaining to § 1345 injunctions—is distinguishable from or inapposite to the case at bar.  Unlike the <u>Odessa Union Warehouse Co-Op</u> decision—a Food, Drug and Cosmetic Act case cited by the Government, public health will not be threatened unless an injunction is issued without satisfying the four-factor test.  Furthermore, in contrast to <u>Heart Research Foundation, Inc.</u> and cases similar to it, this case does not an involve an ongoing fraud requiring a speedy end.  <u>See</u> <u>Heart Research Foundation, Inc.</u>, 996 F.2d at 11; <u>see</u> <u>also</u>, <u>United States v. Cappetto</u>, 502 F.2d 1351, 1358-59 (7th Cir. 1974)(enjoining ongoing gambling violations where the United States sued under 18 U.S.C. § 1964).   In fact, the Government states that Dr. Gupta last submitted a fraudulent bill on February 1, 2010.  <u>See</u> d/e 3-1 at 6 (<u>Aff. In Support of Injunctive Relief</u>).  By July 15, 2011, he fled the country to avoid prosecution.  <u>Id.</u> at 12.

Even if there were an ongoing fraud, the availability of injunctive relief under § 1345 does not mean that the traditional four-factor test

need not be satisfied. The Hoffman opinion is instructive on this matter. See Hoffman, 560 F.Supp.2d 772. In Hoffman, the defendants were engaging in a large-scale mail, wire, and bank fraud. The defendants purchased apartment buildings, converted the properties into condominiums, helped third-party buyers obtain fraudulent loans, and sold condominiums to the third-party buyers without disclosing the third-party buyers' liabilities and false statements. The defendants then placed renters into the condominiums, but diverted rent payments to themselves. Consequently, the third-party buyers became delinquent on their mortgages, condominiums were foreclosed upon, and $5.5 million in losses accrued. Id. at 775. Based on these facts, the United States obtained a temporary restraining order and then a preliminary injunction under § 1345. Additionally, the court granted the United States' request to have a receiver appointed. The receiver, as a neutral party, could administer any of the defendants' legitimate business interests, protect innocent third-parties' interests, and avoid furthering the defendants' scheme to defraud. Id. at 777-78.

Applying the traditional four-factor test, the court in Hoffman found that injunctive relief was warranted.  Id. at 777.  The likelihood of success on the merits was established using a preponderance of the evidence standard.  To meet that burden the United States merely had to show that the defendants devised a fraudulent scheme for the purchasing and selling of property.  The United States satisfied the irreparable harm factor by showing that the defendants' scheme jeopardized the financial stability of renters, purchasers, sellers, escrow agents, and banking institutions.  Id. at 776.  The balancing of harms factor also weighed in the United States' favor.  Among other things, the court found that because of extant vacancies and the fact that renters were occupying many of the defendants' properties, it was necessary to end the defendants' scheme and force the defendants to maintain financial assets for the protection of innocent third parties.  Id. at 776-78.  Finally, the court found that there was a substantial public interest in "protecting innocent parties from predatory and fraudulent schemes."  Id. at 777.

Here, the Government supports its Motion with a 14-page affidavit

from Michael Kuba, an Illinois State Police Officer who avers that his investigation of Dr. Gupta shows that Dr. Gupta violated 18 U.S.C. § 1347 by obtaining $2.3 million in fraudulently obtained health care payments. See d/e 3-1 at 8-9 (Aff. In Support of Injunctive Relief). Officer Kuba's affidavit states that from June 2001 to January 2010, Dr. Gupta and persons acting on his behalf systematically inflated bills they submitted for Medicaid reimbursement. Although the fraudulent scheme is over, Dr. Gupta is now dissipating assets traceable to his fraud insofar as he is selling and transferring property he purchased with proceeds of the fraud. See d/e 3-1 at 10-14 (Aff. In Support of Injunctive Relief). Moreover, Defendant The Nutrition Clinic—a participant in the fraudulent scheme—has yet to collect approximately $300,000 in accounts receivable which may ultimately be subject to the Government's recovery. The Court finds that this evidence is sufficient to prove that a fraud has been committed, the extent of the fraud is established, and the Government is likely to succeed on the merits of a fraud claim. See Williams, 476 F.Supp.2d at 1374; Hoffman, 560 F.Supp.2d at 777.

Irreparable harm is also apparent. Dr. Gupta used fraudulently obtained medical payments to purchase real estate, stakes in companies, etc. By selling these assets or transferring them from his direct control, Dr. Gupta is dissipating assets traceable to his fraud and interfering with the Government's ability to recover financially. Every dissipated dollar is one less dollar that can be applied to restitution. Therefore, the irreparable harm factor supports issuance of an injunction. Hoffman, 560 F.Supp.2d at 776.

Similarly, a balancing of harms supports injunctive relief. Any difficulty Dr. Gupta may experience while his assets are frozen is eclipsed by the potential lack of recovery that may befall the Government if assets are not kept intact. Id. at 776-78.

Finally, as in Hoffman, there is a substantial public interest in "protecting innocent parties from predatory and fraudulent schemes." Id. at 777. Accordingly, application of the traditional four-factor test shows that a preliminary injunction should be issued under § 1345. See Hoffman, 560 F.Supp.2d at 778; see also, Williams, 476 F.Supp.2d at

1374.

## CONCLUSION

For the reasons stated above, Plaintiff United States of America's Motion to Reconsider Temporary Restraining Order (d/e 6) is ALLOWED.

WHEREUPON THE COURT, having considered the matter and being duly advised in the premises finds that a Temporary Restraining Order is warranted pursuant to 18 U.S.C. § 1345. The Court finds that Plaintiff United States of America has shown probable cause to believe that Defendants Gautum Gupta ("Gupta"), Gautum Gupta, M.D., LLC, d/b/a The Nutrition Clinic ("The Nutrition Clinic"), Jaana Monika Virta-Gupta ("Virta-Gupta") committed a Federal health care offense in violation of 18 U.S.C. § 1347. The Court further finds that a continuing and substantial injury to Plaintiff United States of America, the Medicaid program, and the public, absent a temporary restraining order issued without notice, is likely to occur and is defined as follows: the continued disposition and alienation of funds or assets obtained as a result of the

$2.3 federal health care offense or of equivalent value to $2.3 million resulting from the commission of a federal health care fraud offense.  The irreparable harm necessary is established in light of the statutory basis for the issuance of a temporary restraining order under the showing made by Plaintiff United States of America.  See 18 U.S.C. § 1345.

      THEREFORE, at 4:00 p.m. on the 30th day of August, 2011, this Court issues a Temporary Restraining Order ENJOINING and PROHIBITING Defendants Gupta, The Nutrition Clinic, Virta-Gupta, their agents, employees, attorneys, and all persons acting in concert and participation with them, including all banking and other financial institutions at which they do business, business partners, and all other corporations over which the Defendants Gupta, The Nutrition Clinic, or Virta-Gupta exercise control or have an ownership interest, are enjoined in these regards:

    (1) The preceding individuals and entities are prohibited from alienating, withdrawing, transferring, removing, dissipating, or otherwise disposing of, in any manner, any moneys or sums presently deposited, or

held on behalf of Defendants Gupta, The Nutrition Clinic, Virta-Gupta by any financial institution, trust fund, or other financial agency, public or private, that are proceeds from the $2.3 million in fraudulent claims made by Defendants Gupta, The Nutrition Clinic, Virta-Gupta, or any moneys of an equivalent value to those taken through false, fictitious, or fraudulent claims;

(2) The preceding individuals and entities are prohibited from alienating, withdrawing, transferring, removing, dissipating, or otherwise disposing of, in any manner, assets, real or personal, whose value is up to $2.3 million;

(3) Additionally, the preceding individuals and entities are prohibited from interfering with, transferring or disposing of any assets up to $2.3 million in value owned by Gupta, The Nutrition Clinic, Gautam Gupta, LLC, and all other companies, businesses accounts and assets in any way related to Gupta.  Accordingly, Defendants Gupta, The Nutrition Clinic, Virta-Gupta, their agents, employees, attorneys, and all persons acting in concert and participation with them, including all

banking and other financial institutions at which they do business, business partners, and all other corporations over which Defendants Gupta, The Nutrition Clinic, or Virta-Gupta exercise control or have an ownership interest must:

> (A) Preserve all business, financial and accounting records, including bank records, which detail Defendants Gupta's, The Nutrition Clinic's, or Virta-Gupta's business operations and disposition of any payment which directly or indirectly arose from the payment of money to the aforementioned Defendants on behalf of any healthcare benefit program;
>
> (B) To preserve all medical records, including patient records, which relate to Defendants Gupta's, The Nutrition Clinic's, or Virta-Gupta's business operation and/or to services for which claims were submitted to the federal healthcare benefit programs;
>
> (C) To provide to Plaintiff United States of America the following:

(i) a list of all post office boxes or other locations at which mail addressed to Defendant Gupta, The Nutrition Clinic, or Virta-Gupta is received;

(ii) a list of all financial institutions, including but not limited to banks and brokerage houses, at which are or have been maintained in the past four years savings, checking, or any other kind of account or other safe deposit box into which money has been deposited in Defendant Gupta's, The Nutrition Clinic's, or Virta-Gupta's names or in the names of their agents, employees, officers, persons acting in concert with them, or any business names under which they operate, together with the number or other designation of each such account or box;

(iii) a list of all financial institutions, including but not limited to, banks and brokerage houses, at which are maintained, or have been in the past four years, savings,

checking, or any other kind of account or other safe deposit box into which monies received in response to any of the activities described in Plaintiff United States of America's Complaint have been deposited, together with the number of such box or other designation of each such account or box; and

(iv) the names, addresses, and telephone numbers of any individuals who have received remuneration of any kind for assisting in record-keeping, bookkeeping, accounting, brokering, or financial, investment, or tax advice or consultation for Defendant Gupta, The Nutrition Clinic, or Virta-Gupta in the past four years.

(4) To provide an accounting of the assets in which Defendants Defendant Gupta, The Nutrition Clinic, or Virta-Gupta hold a legal or equitable interest, within ten calendar days, and to provide on a monthly basis, commencing forthwith, suitable reports detailing their financial condition; and

(5)  To complete within ten (ten) calendar days of receipt a Financial Disclosure Statement form provided to Defendants Gupta, The Nutrition Clinic, and Virta-Gupta by Plaintiff United States of America.

(6) The duration of this Temporary Restraining Order shall not exceed 14 days of the time and date of its entry.

(7) A preliminary injunction hearing is set for September 1, 2011, at 10:00 a.m. in Courtroom 1, U.S. Courthouse, Springfield, Illinois, 62701.

IT IS SO ORDERED.

ENTERED:  August 30, 2011

FOR THE COURT:                s/ Sue E. Myerscough
                              SUE E. MYERSCOUGH
                              UNITED STATES DISTRICT JUDGE